UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NEW CINGULAR WIRELESS PCS, LLC
d/b/a AT&T Mobility,

                        Plaintiff,

    v.

THE INCORPORATED VILLAGE OF
MUTTONTOWN; THE INCORPORATED
VILLAGE OF MUTTONTOWN BOARD OF
TRUSTEES; THE PLANNING BOARD OF THE
INCORPORATED VILLAGE OF
MUTTONTOWN, THE SITE AND
ARCHITECTURAL REVIEW BOARD OF THE
INCORPORATED VILLAGE OF
MUTTONTOWN, and THE ZONING BOARD OF
APPEALS OF THE INCORPORATED VILLAGE
OF MUTTONTOWN,

                        Defendants.
-------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

2:22-cv-5524-JS-LGD

**LEE G. DUNST**, Magistrate Judge:

        Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("AT&T" or

"Plaintiff") filed this federal lawsuit against Defendants Incorporated Village of Muttontown (the

"Village"), the Incorporated Village of Muttontown Board of Trustees (the "Board of Trustees"),

the Planning Board of the Incorporated Village of Muttontown (the "Planning Board"), the Site

and Architectural Review Board of the Incorporated Village of Muttontown (the "SARB"), and

the Zoning Board of Appeals of the Incorporated Village of Muttontown (the "Zoning Board")

alleging violations of the federal Telecommunications Act, 47 U.S.C. §§ 253 *et seq*. (the

"TCA"), as well as violations of state law under N.Y. Town Law § 274, N.Y. Village Law § 7-

712, and N.Y. C.P.L.R. § 7801.  Presently before the Court is Defendants' motion to dismiss all

claims (the "Motion") pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  *See*

Electronic Case File Number ("ECF No.") 48.  On October 26, 2023, District Judge Joanna

Seybert referred the Motion to the undersigned for a Report and Recommendation. *See* Oct. 26, 2023 Order Referring Motion.

Pursuant to that referral, the undersigned respectfully recommends that the Motion be granted on all claims as to the Village, the Board of Trustees, the Planning Board, and the SARB. Additionally, as to the Zoning Board, the undersigned respectfully recommends that all claims under the TCA and N.Y. C.P.L.R Article 78 be dismissed without prejudice, and that the Court decline to exercise supplemental jurisdiction over all remaining state claims.

## I.    FACTUAL BACKGROUND[1]

Plaintiff is a provider of wireless services incorporated in Delaware with its principal place of business in Atlanta, Georgia. ECF No. 1 ¶¶ 1 & 11. AT&T provides wireless services through an "interlocking network of line-of-sight transceiver facilities." *Id.* ¶ 12. These transceivers send and receive radio signals that are subject to disruption by topography, foliage, man-made structures, and range limitations. *Id.* ¶ 13. AT&T's wireless services provide access to 911 as well as FirstNet, a national public safety broadband network for first responders. *Id.* ¶¶ 14-15.

In the Village of Muttontown, there is an area adjacent to Jericho Oyster Bay Road (including a 2.1 mile stretch of Northern Boulevard and a 1.6 mile stretch along Muttontown Road and Muttontown Eastwoods Road) where AT&T is unable to provide reliable access to services from its network (the so-called "service gap"). *Id.* ¶ 17. The absence of a transceiver facility impairs AT&T's ability to provide wireless services in this area. *Id.* ¶ 19. There are no

---

[1] The relevant alleged facts set forth herein are taken from the Complaint and are accepted as true for purposes of ruling on the Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) ("The court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party." (internal quotations omitted)).

existing structures of sufficient height in the area to host an AT&T facility that would remedy the service gap. *Id.* ¶ 20.

According to Plaintiff, construction of a transceiver facility at One "Raz" Tarufo Way in Muttontown (the "Site") would remedy the service gap. *Id.* ¶ 21. The Site is owned by the Village and contains the Village Hall as well as other municipal offices. *Id.* ¶ 22. AT&T prepared plans to locate a transceiver facility (the "Proposed Facility") at the Site, involving the mounting of twelve antennas attached to a monopole at a height of 150 feet, covered by simulated pine branch camouflage, with a total height of 165 feet. *Id.* ¶ 25.

On or about July 8, 2020, the Board of Trustees approved AT&T's proposed monopole by adopting Resolution 20-79 which authorized the Village, through its mayor, to enter a lease with AT&T (the "Lease"), which was then executed December 22, 2020, permitting AT&T to construct, operate and maintain the Proposed Facility. *Id.* ¶ 27-28. The Lease, however, explicitly provides that use of the Site is contingent on AT&T obtaining all requisite government approvals, and that the Village will "reasonably assist" AT&T with necessary applications. *Id.* ¶¶ 29-30. Under Section 190-75 of the Code of the Village of Muttontown ("Village Code"), the Proposed Facility requires a Special Use Permit from the Board of Trustees. *Id.* ¶ 31. Additionally, Section 190-9 of the Village Code requires approval from the Planning Board to permit an increase in the height of the monopole above 150 feet. *Id.* ¶¶ 31-32.

On March 10, 2021, AT&T submitted an initial application to the Board of Trustees for the Proposed Facility which, after receipt of comments from the Village Building Department, was withdrawn without prejudice on August 25, 2021 to permit AT&T to address comments raised by the Village. *Id.* ¶ 33. On October 12, 2021, AT&T submitted its new application for a Special Use Permit from the Board of Trustees, for modifications of dimensional requirements

from the Planning Board pursuant to Village Code § 190-9, and a permit from the SARB (the "Application"). *Id.* ¶ 34.

The filing of the Application commenced the running of the 150-day "Shot Clock" under 47 C.F.R. § 1.6003(c), (e), which sets forth the reasonable time period within which all Defendants were required to render their decision on the Application. *Id.* ¶ 42. On October 29, 2021, the Village requested supplementation and clarification of certain materials in the Application. Under 47 C.F.R. § 1.6003(d), this request tolled the running of the Shot Clock until AT&T responded. *Id.* ¶ 43. On December 7, 2021, after meeting with the Village to discuss the request, AT&T responded with additional materials, including an analysis documenting the absence of any viable alternate sites. *Id.* ¶ 44. Under 47 C.F.R. § 1.6003(d)(3), AT&T's response resumed the running of the Shot Clock within 10 days of the submission of the supplemental response. *Id.* As a result, the Shot Clock continued running and was set to expire on April 18, 2022.[2] *Id.* ¶ 46.

On January 7, 2022, Mr. Keith Corbett, the Village Counsel, requested additional information concerning the Application. *Id.* ¶ 49. In response, AT&T submitted a letter dated January 13, 2022, providing the requested information, while restating AT&T's demand that hearings on the Application be completed by the Shot Clock expiration date of April 18, 2022. *Id.* ¶ 50. Subsequently, Mr. Corbett made a verbal demand to AT&T's land use counsel that AT&T's letter be revised to concede the Application was "now complete" only as of that date and to omit any claim that the Shot Clock began to run on any earlier date, or that it would expire

---

[2] Here, and at several other points in the Complaint, Plaintiff states that the Shot Clock was set to expire on "April 18, 2021." *See* ECF No. 1 ¶¶ 46 – 47 ("the Shot Clock continued running and was set to expire on April 18, 2021 . . . the Shot Clock would expire on April 18, 2021.") It is clear, however, that these are scriveners' errors, and Plaintiff meant to assert the Shot Clock was set to expire on April 18, 2022. Plaintiff alleges the Shot Clock only began running after resubmission of the Application on October 12, 2021. *See Id.* ¶ 34. Plaintiff also refers multiple times to the April 18, 2022 Shot Clock expiration later in the Complaint. *See Id.* ¶¶ 50-52. Therefore, the Court understands the Complaint to allege the initial Shot Clock expiration date as April 18, 2022.

on April 18, 2022. *Id.* ¶ 51. AT&T's land use counsel refused to comply with this demand. *Id.* On February 9, 2022, Mr. Corbett again called AT&T's counsel, stating that he would "send back" the January 13, 2022 letter, and repeated his claims about the Shot Clock. *Id.* ¶ 52. On March 31, 2022, AT&T became aware that the Village records contain a letter dated March 22, 2022 from Mr. Corbett to AT&T's land use counsel, asserting that "as referenced in your correspondence, the complete application was not filed with the Village until February 9, 2022. Therefore, the FCC Shot Clock did not commence until February 9, 2022." *Id.* ¶¶ 53-54. AT&T denies that it had agreed to this. *See Id.* ¶ 55 ("the March 22, 2022 letter created a false record that AT&T agreed with Mr. Corbett's material misstatements of law and fact when, in fact, AT&T's land use counsel had twice expressly declined to do so."). Rather, AT&T asserts that the Shot Clock began running when the application was originally filed on October 12, 2021. *Id.* ¶ 34.

Additionally, on March 30, 2022, the Acting Town Clerk notified AT&T that Defendants were now taking the position that AT&T would have to seek variances from the Zoning Board for certain relief regarding any Board of Trustees waivers from Special Use Permit requirements under Village Code § 190-79 and any Planning Board decisions under Village Code § 190-9 as modifications of dimensional requirements. *Id.* ¶ 57. In an April 7, 2022 telephone conference with representatives of AT&T, Mr. Corbett and others again stated that AT&T would need a variance from the Zoning Board, but agreed to place the variance application on the agenda for the May 19, 2022 Zoning Board meeting. *Id.* ¶ 60. On April 15, 2022, while disagreeing with the claimed need for separate proceedings before the Zoning Board, AT&T submitted a request for variances to the Zoning Board and indicated its willingness to extend the Shot Clock through May 19, 2022. *Id.* ¶¶ 61-62. The hearing was conducted on May 19, 2022, with AT&T

representatives in attendance.  ECF No. 48-4 (May 19 Hearing Transcript) at 5.  On June 14, 2022 (following the May 19, 2022 hearing),[3] the parties agreed to extend the Shot Clock through August 18, 2022.  *Id.* ¶ 63.

On July 21, 2022, the Zoning Board held a second hearing on the Application, and AT&T representatives attended the hearing.  *Id.* ¶ 72.  Attendees included Mr. Corbett as well as Kaitlyn Vigars and Phillips Lytle, attorneys for AT&T.  ECF No. 48-4 at 70.  During the hearing, representatives for AT&T were questioned extensively about the nature of the Proposed Facility, alternatives to the Site, and the report AT&T provided concerning its need for the 150-foot monopole. *See generally Id.*  At the conclusion of that meeting, the Zoning Board voted to deny the Application.  ECF No. 1  ¶ 88.  On July 27, 2022 and August 8, 2022, AT&T made inquiries to the Acting Town Clerk about the status of a written rationale for the denial and requested that the Acting Town Clerk provide AT&T a copy of the written denial when it was issued.  *Id.* ¶ 90.

The Zoning Board issued its ten-page decision denying the Application on August 17, 2022.  DE 1-1 (Exhibit 1 to the Complaint).  In rejecting the Application, the Zoning Board explained its findings regarding the "Shot Clock," "Substantial Evidence," and "Community Concerns."  *Id.* at 2.  The Zoning Board's written decision is dated August 17, 2022, and is signed by the Chairperson of the Village Board, the Village Clerk, and a Notary Public.  *Id.* at 10.  Additionally, every page of this decision is stamped "RECEIVED AUG 17, 2022 MUTTONTOWN VILLAGE CLERK."  *Id.* at 1-10.

On August 18, 2022 and August 30, 2022, AT&T again asked the Acting Town Clerk about the status of the written denial and requested that the Acting Town Clerk provide AT&T a

---

[3] AT&T does not contend in the Complaint that the Shot Clock expired on May 19, 2022.  *See* ECF No. 1 ¶ 96 ("The last extension of the Shot Clock for the Application expired August 18, 2022.")

copy of the written denial when it was issued.  *Id.* ¶ 90.  On September 8, 2022, the Acting Town

Clerk provided AT&T with a copy of the written denial.  *Id.* ¶ 92.

## II.    PROCEDURAL BACKGROUND

On September 15, 2022, Plaintiff's commenced this action in the United States District

Court for the Eastern District of New York.  ECF No. 1.  In its four-count Complaint, Plaintiff

claims violations of the TCA (47 U.S.C. §§ 253, 332), as well as violations of state law under

N.Y. Town Law § 274, N.Y. Village Law § 7-712, and N.Y. C.P.L.R. § 7801.  *Id.* ¶¶ 93-116.

Specifically, Plaintiff contends that Defendants violated the TCA by intentionally delaying

proceedings before requisite town boards, prohibiting AT&T from providing wireless services,

and not supporting the decision with substantial evidence.  *Id.*  Additionally, Plaintiff claims

Defendants violated parallel New York state laws by delaying the approval process and abusing

their discretion with respect to the denial of Plaintiff's Application.  *Id.*  ¶¶ 112-16.

On December 12, 2022, Defendants filed a motion for a pre-motion conference pursuant

to their anticipated motion to dismiss.  ECF No. 31.  Judge Seybert scheduled a pre-motion

conference for January 31, 2023.  *See* January 20, 2023 Order.  At that conference, Judge

Seybert ordered a briefing schedule.  *See* ECF No. 38.  On March 9, 2023, Defendants filed the

instant motion to dismiss before Judge Seybert.  *See* ECF No. 48.  On April 10, 2023, Plaintiff

filed a memorandum in opposition to the motion.  *See* ECF No. 50.  On May 1, 2023, Defendants

replied.  *See* ECF No. 51.  On October 26, 2023, Judge Seybert referred the Motion to the

undersigned for a Report and Recommendation.  *See* Oct. 26, 2023 Order Referring Motion.

## III.    LEGAL STANDARDS

### A.    Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a party may move to dismiss a

complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "Dismissal of a case

for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In deciding a Rule 12(b)(1) motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Kuai Le Chen v. Nielsen*, 365 F. Supp. 3d 292, 294 (E.D.N.Y. 2019) (quoting *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)).

### B.    Failure To State a Claim

Under Rule 12(b)(6), a party may move to dismiss a complaint when it fails to state a claim. Fed. R. Civ. P. 12(b)(6). Courts evaluate motions to dismiss under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard requires the court to accept as true all well-pled factual allegations in the Complaint and consider all attachments and documents incorporated by reference. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). The court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations omitted). While the court accepts the Complaint's well-pled allegations as true, the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. *See In re Facebook, Inc., IPO Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 664; *see also Id.* at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the Complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 664.

### C.  Plaintiff's Claims Under the TCA

#### 1.  The Shot Clock Claim (Count I)

The TCA provides that "state and local governments must act on applications within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii).  "The FCC—the federal agency charged with enforcing the TCA—established that such a reasonable time is 'presumptively, 90 days to process personal wireless service facility siting applications requesting collocations, and, also presumptively, 150 days to process all other applications.'" *Verizon Wireless of E. LP v. Town of Wappinger*, No. 20-CV-8600, 2022 WL 282552, at *12 (S.D.N.Y. Jan. 31, 2022) (quoting *Up State Tower Co., LLC v. Town of Kiantone, New York*, 718 F. App'x 29, 31 (2d Cir. 2017)).  Agreements between localities and wireless service providers, however, can toll this Shot Clock.  *See Verizon Wireless of E. LP*, 2022 WL 282552, at *17 (detailing how agreements between the parties tolled the Shot Clock); *ExteNet Sys., Inc. v. Vill. of Plandome*, No. CV197054, 2021 WL 4449453, at *14 (E.D.N.Y. Sept. 29, 2021)  (explaining that "plaintiff and the Village entered into a tolling agreement on March 28, 2019," which extended the Shot Clock).  Thus, to survive a motion to dismiss, Plaintiff must plausibly allege that a decision on its Application was not made prior to expiration of the Shot Clock as extended by any applicable tolling agreements.

#### 2.  The Prohibition Claim (Count II)

"The TCA limits state and local regulation 'of the placement, construction, and modification of personal wireless service facilities.'" *Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 531 (2d Cir. 2005) (quoting 47 U.S.C. § 332(c)(7)).  Such regulation "(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i). "The Second Circuit has clearly stated that this subclause 'precludes denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land lines.'" *Verizon Wireless of E. LP*, 2022 WL 282552, at *12 (quoting *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999)). "If an applicant's proposal is not the least intrusive means of closing a significant gap in coverage, a local government may reject [the] application ... without thereby prohibiting personal wireless services." *T-Mobile Ne. LLC v. Town of Ramapo*, 701 F. Supp. 2d 446, 456–57 (S.D.N.Y. 2009) (internal quotations omitted); *ExteNet Sys., Inc.*, 2021 WL 4449453, at *20 ("[T]o be sure, [a] local government may reject an application for construction of a wireless service facility . . . without thereby prohibiting personal wireless services if the service gap can be closed by less intrusive means." (internal quotations omitted)). Therefore, Plaintiff must plausibly allege Defendants rejected a proposal to remedy an existing gap in coverage by rejecting an application that was the least intrusive means of closing that gap.

### 3. The Substantial Evidence Claim (Count III)

"Further, state and local governments . . . may not deny such an application except in a written decision 'supported by *substantial evidence* contained in a written record.'" *Omnipoint Commc'ns, Inc.*, 430 F.3d 529 at 531 (quoting 47 U.S.C. § 332(c)(7)(B) (emphasis in original)). "'Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence.'" *ExteNet Sys., Inc.*, WL 4449453, at *14 (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 493 (2d Cir. 1999)). Put another way, "if the Court finds that even one reason given for the denial is supported by substantial evidence, the decision of the local zoning body cannot be disturbed." *Id.* at 15 (quoting *New*

10

*York SMSA Ltd. P'ship v. Inc. Vill. of Mineola*, No. 01-CV-8211, 2003 WL 25787525, at *5 (E.D.N.Y. Mar. 26, 2003).  At the motion to dismiss stage, Plaintiff must plausibly allege that Defendants did not provide even one reason for the denial that is supported by substantial evidence.

## IV.  DISCUSSION

Defendants seek dismissal of all claims against the Village, the Board of Trustees, the Planning Board, and the SARB under Rule 12(b)(1) because none of the claims are justiciable against them.  *See* ECF No. 48-5 at 5-9.  Defendants seek dismissal of all claims against the Zoning Board under Rule 12(b)(6) because Plaintiff does not plausibly allege violations under the TCA and state law.

### A.   The Claims Against the Village, Board of Trustees, Planning Board, and SARB

Defendants assert that the claim in Count I (the "Shot Clock Claim") against these four governing bodies is not ripe.  ECF No. 48-5 at 5-9.  Additionally, Defendants contend the claims in Counts II and III (the "Prohibition Claim" and the "Substantial Evidence Claim," respectively) against the Village, Planning Board, and SARB should be dismissed because no justiciable controversy exists.  The Court agrees.

#### 1.   The Shot Clock Claims Against These Defendants Are Not Ripe

To be justiciable under the case or controversy requirement in Article III, the case must be ripe and thus not dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257 (1998)).  "Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority."  *Vill. Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022)

(quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)).  Ripeness, "[a]t its heart is whether [the Court] would benefit from deferring initial review until the claims we are called on to consider have arisen in a more concrete and final form."  *Id.*  A concern with ripeness avoids "entangling [the Court] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur."  *Vill. Green At Sayville*, 43 F.4th 287, 293 (quotations omitted).

Here, the Shot Clock violation claims against the Village, Planning Board, SARB, and Board of Trustees are abstract and speculative.  First, nowhere does Plaintiff allege that it made any application before the Village itself.  Rather, the Application at issue was made to, and decided upon by, the Zoning Board.  ECF No. 1 ¶ 61.  Second, and more importantly, the claims against the Planning Board, Board of Trustees, and SARB are all based on proceedings that were stayed on April 15, 2022, when Plaintiff filed its Application for a variance before the Zoning Board.  *See Id.* at  ¶¶ 61-62.  New York state law provides that an appeal by an applicant to the Zoning Board stays "all proceedings in furtherance of the action appealed from."  Village Law 7 §-712 a[6].  During that stay through the pendency of the Zoning Board review, none of the other Defendants had the power to approve any of Plaintiff's applications.  Then, once the Zoning Board denied the variance Application, these Defendants were divested of their authority to act and could not overrule the Zoning Board's decision.  *See* Village Law 7 §-712b (granting the Zoning Board of Appeals the ultimate authority to grant or deny variance applications.)

Plaintiff argues, however, that even though these entities were unable to act during this time, the stay did not extend the Shot Clock under the TCA.  *See* ECF No. 50 at 17-19.  The crux of Plaintiff's argument is that "Section 332(c)(7)(B)(ii) explicitly supplants state authority by *requiring* zoning authorities to render a decision 'within a reasonable period of time,' and the

meaning of that phrase is indisputably a question of federal law." *Id.* at 18 (quoting *City of Arlington v. F.C.C.*, 569 U.S. 290, 305 (2013) (emphasis in original)).  Essentially, Plaintiff asserts that "Defendants cannot hide behind State and local law to avoid obligations under the TCA." *Id*. at 18.  This proposition is basically correct.  It should be apparent, however, that while Defendants cannot hide behind state law to avoid federal obligations, Plaintiff cannot hide behind federal law to avoid the ripeness requirement in Article III of the Constitution.

Here, if any of these Defendants hypothetically had approved any part of the Application in violation of the stay required by state law, that approval would have been mooted by the Zoning Board's subsequent denial of variance relief on July 21, 2022.  Plaintiff instead suggests that Defendants' request for the variance application was a stalling tactic.  *See* ECF No. 1 ¶ 57 ("on March 30, 2022 the Acting Town Clerk, for the first time, notified AT&T that Defendants were taking the position that AT&T would have to seek variances from the Zoning Board.") Plaintiff, however, alleges no facts to suggest this request for a supplemental application was unnecessary or unreasonable.  *See Verizon Wireless of E. LP*, 2022 WL 282552, at *22 ("[w]hile additional rounds of review may well be expensive, inefficient, time-consuming, and ultimately futile ... 'impracticalities, time delays, expense and other inefficiencies' [do] not amount to 'harm ... sufficiently strong to outweigh the unfitness for review embodied in the ripeness doctrine.'" (quoting *Up State Tower Co., LLC v. Town of Kiantone, New York*, No. 16-CV-00069, 2016 WL 7178321, at *7 (W.D.N.Y. 2016)).  Moreover, the Acting Town Clerk notified Plaintiff of the need to file this application before the Shot Clock deadline of April 18, 2022.  ECF No. 1 ¶ 57. Plaintiff then agreed to multiple extensions of that deadline.  *See Id.* ¶¶ 59-63. (detailing agreements to extend the deadline to May 19, 2022, and then to August 18, 2022).  Plaintiff cannot now walk away from the fact that it agreed to extend the deadline to August 18, 2022.

Finally, the Zoning Board decision was rendered before that Shot Clock deadline of August 18, 2022.  *See* ECF No. 1-1.  Thus, the claimed injuries here by Plaintiff are hypothetical and speculative.  They are grievances over what might have happened *if* the variance application had not been made to the Zoning Board, *if* Plaintiff had not agreed to extend the Shot Clock, or "*if* the Zoning Board denial is reversed."  *See* ECF No. 50 at 26 (emphasis added).  Therefore, the Shot Clock claims are not ripe against these Defendants and should be dismissed.

### 2.  No Justiciable Controversy Exists on Counts II and III

It is long settled that Article III, Section 2 of the United States Constitution limits the subject matter of federal courts to justiciable "cases or controversies."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).  "'In order to qualify as a justiciable 'case or controversy' under Article III, '[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.'"  *Prime Prop. & Cas. Ins. Inc. v. Elantra Logistics Inc.*, No. 21CV2117, 2022 WL 94404, at *2 (E.D.N.Y. Jan. 10, 2022) (quoting *Haworth*, 300 U.S. at 240.)  "As used in the Constitution, those words do not include every sort of dispute, but only those 'historically viewed as capable of resolution through the judicial process.'"  *Hollingsworth v. Perry*, 570 U.S. 693, 700, 133 S. Ct. 2652, 2659 (2013) (quoting *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 (1968)).  Thus, the dispute between the parties must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771 (2007) (internal quotations omitted).

14

Here, Plaintiff's allegations in Counts II and III do not demonstrate any actual controversy against the Village, Planning Board, Board of Trustees, or SARB. As Defendants assert, none of these entities had "subject matter jurisdiction over the Plaintiff's monopole development." ECF No. 48-5 at 5-9. There is no claim in the Complaint that, if taken as true, would demonstrate that any of these entities had jurisdiction to approve the Proposed Facility. Both parties agree that the Zoning Board rendered the final (and only) decision on the Proposed Facility. *See* ECF No. 48-5 at 5-9 ("the claims in Count I against the Defendants Planning Board, Board of Trustees and SARB should be dismissed since none of those Boards issued a final decision"); ECF No. 1 ¶ 88 ("the *Zoning Board* voted to deny the Application" (emphasis added)).

The Village, Planning Board, Board of Trustees, and SARB thus had no authority to contravene this ruling by the Zoning Board, and none of them could have failed to rely upon substantial evidence in a decision they did not and could not make. *See Verizon Wireless of E. LP v. Town of Wappinger*, 2022 WL 282552, at \*22 ("courts have routinely dismissed claims under [47 U.S.C. § 332(c)(7)(B)(i)(II)] when the municipality in question has not issued a final ruling on an application."). Under these circumstances, there is no recourse any of these entities could provide to Plaintiff on the claims in Counts II and III, and so there is no controversy between these parties on these counts. *Verizon Wireless of E. LP*, 2022 WL 282552, at \*22 ("[B]ecause the defendants have not rejected Sprint's application for an excavation permit or a CUP, they have not taken any final action. Because no decision or final action has been made on Sprint's request, the company has failed to state a cause of action under §§ 332(c)(7)(B)(i)(I) and 332(c)(7)(B)(i)(II)." (quoting *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1277 (S.D. Cal. 2002)). Plaintiff's actual controversy on the Prohibition and Substantial

Evidence Claims is thus with the Zoning Board.[4]  Therefore, these claims are not justiciable because they do not admit of "specific relief" and, thus, should be dismissed.  *See MedImmune, Inc.* 549 U.S. 118 at 127.

### B.   The TCA Claims Against the Zoning Board

Defendants argue that the claims against the Zoning Board should be dismissed under Rule 12(b)(6) because Plaintiff does not plausibly allege violations under the TCA or applicable state statutes.  The Court agrees.

#### 1.   The Shot Clock Claim

Plaintiff alleges that the Zoning Board violated the TCA by not rendering its decision by the extended Shot Clock deadline of August 18, 2022.  ECF No. 1 ¶¶ 93-99.  Plaintiff asserts that the written decision was not in fact adopted on August 17, 2022 (even though, according to the document, that is the date when it was issued and signed by three different people) and that it was not disclosed until September 8, 2022.  *Id.* ¶ 99(f).  The Complaint concedes that "at the July 21, 2022 meeting, the Zoning Board voted to deny the Application."  *Id.* ¶ 88.  Plaintiff, however, alleges that no written decision was adopted on that date in compliance with the TCA, and that the eventual written decision was never adopted.  *Id.* ¶ 97 ("The Zoning Board did not adopt the written denial dated August 17, 2022 at a public meeting.")

---

[4] In response to Defendants' argument, Plaintiff asserts that the claims are justiciable in part because nothing would "prevent the non-Zoning Board Defendants from stepping in to block construction if the Zoning Board denial is reversed."  ECF No. 50 at 16.  Whether or not this is true, though, is immaterial, hypothetical, and speculative.  None of these Defendants have made any final decision regarding Plaintiff's Application.  Thus, only if any of these Defendants render a decision on Plaintiff's Proposed Facility could there exist an actual case or controversy here.  *See e.g*; *New Cingular Wireless PCS, LLC v. Town of Stoddard, N.H.*, 853 F. Supp. 2d 198, 208 (D.N.H. 2012) ("Because the Board did not render a final decision denying New Cingular's application, New Cingular's claims under 47 U.S.C. §§ 332(c)(7)(B)(i)(II) and 332(c)(7)(B)(iii) are premature, and must be dismissed."); *Glob. Tower Assets, LLC v. Town of Rome, Me.*, No. 14-CV-00085, 2014 WL 3784233, at *10 (D. Me. July 31, 2014) (dismissing claims under § 332(c)(7)(B)(i)(I), § 332(c)(7)(B)(i)(II) and § 332(c)(7)(B)(iii) against the Town of Rome and its Planning Board as not ripe for review because neither had taken "final action" on Plaintiff's application).

16

It is difficult, however, to see on these facts how the Zoning Board could have violated the Shot Clock.  Both parties agree that the Zoning Board denied the Application on July 21, 2022, and that the written decision on August 17, 2022 provided the rationale for that earlier denial.  Plaintiff nowhere alleges, and cites to no law, that would require the Zoning Board to have *another* hearing after July 21, 2022 to adopt a written decision laying out the reasons for its decision in the first hearing.  Plaintiff instead relies on several cases for the proposition that a board cannot render a decision for certain reasons and then later provide different "post-hoc rationalizations." *Cellco Partnership v. Town of Clifton Park*, 365 F. Supp. 3d 248, 262 (N.D.N.Y. 2019);  *Am. Towers, Inc. v. Wilson County,* 3:10 cv 1196, 2014 WL 28953, at * 7 (M.D.T.N. Jan. 2, 2014) (statement of reasons must reflect board "speaking as a unified body[.]").  ECF No. 50 at 28.  As the Supreme Court has stated, a written record can be issued after the date of the earlier denial:

> The [TCA] requires localities to provide reasons when they deny cell phone tower siting applications, but that the Act does not require localities to provide those reasons in written denial letters or notices themselves.  A locality may satisfy its statutory obligations if it states its reasons with sufficient clarity in some other written record issued essentially contemporaneously with the denial.

*T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 307-308 (2015); *see T Mobile Ne. LLC v. City of Wilmington, Delaware*, 913 F.3d 311, 320 (3d Cir. 2019) (explaining that "essentially contemporaneously" means within a timeframe that allows "an entity . . . to make a considered decision whether to seek judicial review [] knowing the reasons for the denial of its application.")

Here, there are no factual allegations that the written decision was distinct and not essentially contemporaneous with the denial at the July 21, 2022 hearing.  In fact, the Zoning Board's decision complied with *Roswell's* requirement to provide "essentially contemporaneous" written rationale.  The Zoning Board provided a comprehensive written decision clearly

explaining the denial in connection with testimony given at the July 21, 2022 hearing within 30 days, and gave Plaintiff ample time to review the decision in order to seek a judicial review. *See* ECF No. 1 ¶¶ 88-91.

The only contrary assertion in the Complaint is the speculative and conclusory statement that the "Zoning Board did not adopt the written denial." Nothing in the Complaint supports this assertion. Additionally, there is no factual allegation that the decision was fraudulently backdated, despite Plaintiff's allusions to that effect. *See* ECF No. 50 at 26-27 ("while someone *dated* the Decision August 17, there is no proof that this is when it was actually adopted.") (emphasis added). The Court disagrees with this speculative allegation, as the Zoning Board decision (which is an exhibit to the Complaint) states on its face that it was adopted on August 17, 2022, was signed by three different people on that date, and was stamped by the Village Clerk on that date. ECF No. 1-1. Plaintiff's conclusory allegations to the contrary are not sufficiently plausible and should therefore be rejected.

2. The Prohibition Claim

Much like the Shot Clock Claim, Plaintiff provides only cursory legal allegations in support of its Prohibition Claim. These allegations do not satisfy the *Iqbal* pleading standard and should therefore be dismissed. As stated above, to pursue a valid Prohibition Claim, a plaintiff must plausibly allege that Defendants rejected a proposal to remedy an existing gap in coverage by rejecting an application that was the least intrusive means of closing that gap. *See Verizon Wireless of E. LP*, 2022 WL 282552, at *12. Plaintiff provides several factual allegations on the Zoning Board's denial of the Application, as well as the exact location and size of the service gap. *See* ECF No. 1 ¶¶ 11-20, 88-92. There are no factual allegations, however, that the Proposed Facility was the least intrusive means of closing the service gap. In fact, the Complaint

18

provides only one cursory allegation on this point, stating "AT&T made a good faith effort to identify and evaluate less intrusive alternatives to remedy a significant service gap, and the Proposed Facility is the least intrusive means of providing consistent and reliable access to AT&T customers and FirstNet users in the service gap." *Id.* ¶ 104. This allegation, however, is merely a legal conclusion, and provides no factual support that the Court should accept as true. *See Iqbal*, 556 U.S. at 664 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Plaintiff asserts that the allegation at paragraph 104 of the Complaint "offer[s] far more than is required under the *Ashcroft* plausibility test," but again provides no factual or legal argument to support that conclusion. *See* ECF No. 50 at 7. Instead, Plaintiff points to numerous instances in the hearing transcripts to refute Defendants' claims that it did not search for less intrusive sites in good faith. *See Id.* at 8-10 (citing instances of Defendants' "cherry-picked hearing transcript citations" as "misleading").

This criticism of Defendants' view of the record, however, does not obviate Plaintiff's duty to plead concrete facts about why the Proposed Facility is the least intrusive means of remedying the gap. Merely reiterating that the hearing record "does not contain substantial evidence . . . that any potential alternative would be available, or suitable, or less intrusive, or otherwise more feasible" is not sufficient to survive a motion to dismiss. ECF No. 1 ¶¶ 73-83; *see Omnipoint Commc'ns., Inc.*, 430 F.3d 529 at 536 (granting summary judgement for Defendants where "Omnipoint stated (without documentation) that it was unable to build a less intrusive structure."). Plaintiff does not allege facts about why the Proposed Facility was the least intrusive site or that AT&T conducted a good faith search for other more feasible sites. Therefore, the Prohibition Claim should be dismissed.

3.  The Substantial Evidence Claim

Finally, Plaintiff alleges that there was not substantial evidence in the record to justify the Zoning Board's decision denying Plaintiff's Application.  For the following reasons, the Court finds that there was substantial evidence in the record and that this claim should also be dismissed.  "[I]f the Court finds that even one reason given for the denial is supported by substantial evidence, the decision of the local zoning body cannot be disturbed."  *ExteNet Sys., Inc. v. Vill. of Flower Hill*, 617 F. Supp. 3d 125, 130 (E.D.N.Y. 2022) (citing *T-Mobile Ne. LLC v. Town of Islip*, 893 F. Supp. 2d 338, 355 (E.D.N.Y. 2012)).  The substantial evidence review is thus a "deferential standard, and courts may neither engage in their own fact-finding nor supplant the Board's reasonable determinations."  *Id.*

In its decision, the Zoning Board found that Plaintiff "failed and refused to seriously consider any lesser intrusive alternatives such as co-locating on existing systems."  ECF No. 1, Ex. 1 at 5.  This requirement is nearly identical to the Prohibition claim discussed above, and, if supported by substantial evidence, can justify a denial.  *See ExteNet Sys., Inc.*, 617 F. Supp. 3d 125 at 130 ("[u]nder New York law, lack of public necessary can justify a denial . . . In the context of wireless facilities, public necessary requires the provider to demonstrate that there was a gap in cell service, and that building the proposed [facility] was more feasible than other options.") (internal quotations and citations omitted).  Thus, if there is substantial evidence in the record that Plaintiff did not seriously consider alternatives, it cannot succeed on its claim.

Plaintiff asserts there was no substantial evidence in the record that it did not consider the "existence of any viable, available, less intrusive, or more feasible alternate means to remedy the service gap."  ECF No. 1 ¶ 75; *Id.* ¶¶ 73-83.  Again, though, this is simply a cursory legal conclusion, and the Court need not accept it as true.  In fact, on the hearing record alone, there

are several instances where Plaintiff seems to admit it did not provide evidence of considered alternatives to the 165-foot tower.  *See* July 21, 2022 Hearing Transcript at 144-145 (a member of the Zoning Board asks Plaintiff's representative "did you look to see if there's any other equipment that would fill the coverage gap?" Plaintiff's representative answers "Given the size of the coverage gap, it is not a feasible solution. It is not in the application."); *Id.* ("if we wanted to, why can't we get three, 80-foot poles that cover the area instead of one?" "Generally, the preference is for less facilities as opposed to more."); *Id.* at 144 ("You haven't submitted any evidence before us to let us know there are any alternatives, correct?" "The evidence we submitted establishes that the 150-foot pole is what's required to fill the coverage gap.").

There is thus substantial evidence on the record demonstrating that Plaintiff failed to provide evidence it seriously considered less intrusive alternatives.  The hearing transcript shows there may well be other ways to remedy the service gap.  Of course, the decision does not limit itself only to this point and rejects Plaintiff's Application for a multitude of reasons.  *See generally* ECF No. 1, Ex. 1 (denying the Application for several reasons, including failure to demonstrate public necessity, failure to consider siting priority under applicable law, impact on property values, and safety and welfare concerns.)  The Court, however, need not consider these other reasons for the Zoning Board decision, given that it has found substantial evidence that AT&T did not show it considered less intrusive alternatives.  *See ExteNet Sys., Inc.*, 617 F. Supp. 3d at 130 ("[s]ince one reason given by the Board for its decision was supported by substantial evidence, the Court need not evaluate its other reasons." (citing T-*Mobile Ne. LLC v. Town of Islip*, 893 F. Supp. 2d 338, 354 (E.D.N.Y. 2012)).  Therefore, Plaintiff's Substantial Evidence Claim should be dismissed.

C.    **Remaining State Law Claims (Count IV)**

Plaintiff also alleges that the Zoning Board violated other state laws, including N.Y.

Town Law § 274, N.Y. Village Law § 7-712, and N.Y. C.P.L.R. § 7801. ECF No. 1 ¶¶ 112-116.

However, because the undersigned recommends that all the federal claims should be dismissed,

the Court recommends that jurisdiction not be exercised as to these remaining state claims.[5]  *See*

*Walker v. City of New York*, 367 F. Supp. 3d 39, 65–66 (S.D.N.Y. 2019) ("[t]he Court has

discretion to decline to exercise supplemental jurisdiction over state-law claims that remain once

all federal law claims have been dismissed."  (citing *Kolari v. New York-Presbyterian Hosp.*, 455

F.3d 118, 121–22 (2d Cir. 2006)).  Once a district court's discretion over supplemental

jurisdiction is triggered under 28 U.S.C. § 1367(c)(3), it balances the traditional "values of

judicial economy, convenience, fairness, and comity."  *Hu v. City of New York*, No. 22-183,

2023 WL 3563039, at *3 (2d Cir. May 19, 2023) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 343, 108 S. Ct. 614, 615 (1988).  "In the usual case in which all federal-law claims are

eliminated before trial, the balance of factors ... will point toward declining to exercise

jurisdiction over the remaining state-law claims."  *Booker v. Suffolk Cnty. Dep't of Corr.*, No. 23-

CV-7732, 2023 WL 7663288, at *5 (E.D.N.Y. Nov. 15, 2023) (quoting *Cohill* 484 U.S. at 350 n.

7); *see also Kolari*, 455 F.3d at 122 (2d Cir. 2006).

Here, the Court finds that the balance tips in the usual direction of declining jurisdiction.

Except for the Article 78 claim (*see* n.5 *supra*), the remaining New York state law claims need

_____

[5] It is noted here, however, that the claim under N.Y. C.P.L.R. § 7801 asserts that the Zoning Board's
decision was an abuse of discretion.  *See* ECF No. 1 ¶ 116.  The abuse of discretion standard in Section 7801,
though, is identical to the TCA's substantial evidence standard.  *See Cellco P'ship v. Town of Clifton Park, New
York*, 365 F. Supp. 3d 248, 263 n.2 (N.D.N.Y. 2019) ("Although 'Article 78 imposes its own requirement that local
decisions be supported by substantial evidence[,]' the test for relief from a zoning board's decision under Article 78
'is essentially the same as that under the TCA'" (quoting *Town of Islip*, 893 F.Supp.2d at 373))).  Given that there is
substantial evidence for the Decision, though, Plaintiff cannot succeed on the Article 78 claim, and it should
likewise be dismissed.

not be decided here and are better resolved by a state tribunal. *See Schmitt v. China XD Plastics Co., Ltd.*, No. 20CV6028, 2023 WL 6385763, at *11 (E.D.N.Y. Sept. 29, 2023) "([n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (quoting (*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966)). Thus, the Court recommends supplemental jurisdiction not be exercised as to the remaining state law claims.

## V.    CONCLUSION

For the foregoing reasons, the undersigned recommends the Motion be granted as to all claims under the TCA and N.Y. C.P.L.R. Article 78, and those claims should be dismissed without prejudice against all Defendants. The undersigned also recommends that the Court decline to exercise jurisdiction over the remaining state law claims against the Zoning Board, and therefore dismiss those claims without prejudice.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Seybert. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York
December 18, 2023

s/ Lee G. Dunst
_____

**LEE G. DUNST**
United States Magistrate Judge