UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NEW CINGULAR WIRELESS PCS, LLC,

        Plaintiff,

        v.

THE INCORPORATED VILLAGE OF
MUTTONTOWN, et al.,

        Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-5524-SJB-LGD

**BULSARA, United States District Judge:**

    Plaintiff New Cingular Wireless, doing business as AT&T Mobility ("AT&T"), is a provider of wireless services, and began this case in September 2022. (Compl. filed Sep. 15, 2022 ("Compl."), Dkt. No. 1 ¶¶ 1, 11). Its Complaint alleged that Defendants violated the federal Telecommunications Act ("TCA"), 42 U.S.C. § 332, and state law, by stalling approval of AT&T's plans to build a new cell service tower in the Village of Muttontown ("the Village"). (Compl. ¶¶ 93–116). The original Complaint was dismissed in its entirety, without prejudice, in September 2024 by District Judge Seybert, on recommendation from Magistrate Judge Dunst. *New Cingular Wireless PCS v. Inc. Vill. of Muttontown*, No. 22-CV-5524, 2024 WL 4264200, at *1 (E.D.N.Y. Sep. 23, 2024) [hereinafter *New Cingular Wireless II*], *adopting Report and Recommendation*, 2023 WL 8791107 (Dec. 18, 2023) [hereinafter *New Cingular Wireless I*].

    Now before the Court is AT&T's motion seeking to cure the previous deficiencies that resulted in dismissal. (Pl.'s Mem. of Law in Supp. of Mot. to Vacate Dismissal

Order and Leave to File a First Am. Compl. dated May 15, 2025 ("Pl.'s Mem."), Dkt. No. 66-1 at 1–2). AT&T has dropped several of the original defendants in its Proposed Amended Complaint ("PAC"), and removed two of the four original claims, leaving only two TCA claims: for (1) prohibition of services—that is, an improper denial of a facility that was the least intrusive means of remedying a cell service gap; and (2) a lack of substantial evidence supporting its denial of its application to build the tower. (*Compare* Compl. ¶¶ 3–5, 94–116, *with* Proposed Am. Compl. ("Am. Compl."), Dkt. No. 66-2 ¶¶ 2–3, 180–209). The two Defendants who remain are the Incorporated Village of Muttontown and the Zoning Board of Appeals of the Incorporated Village of Muttontown (collectively, "Defendants"). (Am. Compl. ¶¶ 2–3).

For the reasons that follow, AT&T's motion to amend is granted.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

AT&T commenced this action in September 2022. (Compl. at 1). The original Complaint alleged that in October 2021, AT&T submitted proposed plans to build a new cell service tower (the "Proposed Facility") to various branches of the Village's government, including its Board of Trustees, Planning Board, and Site and Architectural Board ("SARB"). (*See* Compl. ¶¶ 17–41). AT&T alleged that the Proposed Facility was needed because there was a significant telephone coverage service gap. (*Id.* ¶ 18). AT&T also alleged that the Village and its various Boards engaged in an unreasonably protracted application process, with the Zoning Board ultimately denying the application. (*Id.* ¶¶ 27–92). AT&T claimed the denial violated several requirements of the TCA as well as state law. (*Id.* ¶¶ 93–116). There were three TCA claims. The first

2

was for failing to render the decision within a reasonable amount of time (the "Shot Clock" claim) under 47 U.S.C. § 332(c)(7)(B)(ii). (Compl. ¶ 94). The second was for prohibiting the provision of covered telephone services (the "Prohibition Claim") under 47 U.S.C. § 332(c)(7)(B)(i)(II) and 47 U.S.C. § 253(a). (Compl. ¶ 101). The third was for denying the application without substantial evidence in a written record (the "Substantial Evidence Claim"), 47 U.S.C. § 332(c)(7)(B)(iii). (Compl. ¶ 107). The fourth claim, a state law claim, was for failure to hold a public hearing on the application in a timely manner under New York Town Law § 274-b(6), N.Y. Village Law 7-712-A(9), and N.Y. C.P.L.R. Art. 78. (Compl. ¶¶ 112–116).

Defendants—which at the time included the Village, the Board of Trustees, the Planning Board, the SARB, and the Zoning Board—filed a motion to dismiss with Judge Seybert. (Defs.' Mot. to Dismiss dated Mar. 9, 2023, Dkt. No. 48 at 1). Judge Seybert referred the motion for a Report and Recommendation ("R&R") to Judge Dunst. (Order dated Oct. 26, 2023).

A. The Prior Dismissal

Judge Dunst issued his R&R in December 2023, recommending the motion should be granted and all claims dismissed without prejudice. *New Cingular Wireless I*, 2023 WL 8791107, at *11.

As relevant here, Judge Dunst found that AT&T had only alleged cursory facts in support of the Prohibition Claim, and that it should be dismissed against all defendants. *Id.* at *9. AT&T had failed to "plausibly allege that Defendants rejected a proposal to remedy an existing gap in coverage by rejecting an application that was the least

3

intrusive means of closing that gap." *Id.* (citing *Verizon Wireless of E. LP v. Town of Wappinger*, No. 20-CV-8600, 2022 WL 282552, at *12 (S.D.N.Y. Jan. 31, 2022)).  Judge Dunst found that AT&T failed to "plead concrete facts about why the Proposed Facility is the least intrusive means of remedying the gap" and instead simply stated that this was the case.  *Id.*  Judge Dunst also recommended the Substantial Evidence Claim should be dismissed, because "Plaintiff failed to provide evidence it seriously considered less intrusive alternatives."  *Id.* at *10.[1]  Judge Seybert found there was no clear error in the R&R, and adopted Judge Dunst's opinion in its entirety.  *New Cingular Wireless PCS II*, 2024 WL 4264200, at *1.

B.  AT&T's Proposed Amended Complaint

The PAC alleges that AT&T underwent a lengthy process from 2020 to 2022 only to have its Application denied.  The Application sought permission to build a 165-foot monopole with antennae to support telephone service on municipally-owned land where Village offices are located.  (Am. Compl. ¶¶ 23–73).

AT&T alleges that the Application record demonstrates that "the Proposed Facility at the Site would permit AT&T to remedy the Service Gap," (*id.* ¶ 21), and would have minimal impact, (*id.* ¶ 38).  The history is as follows: following several rounds of meetings and submissions, on December 7, 2021, AT&T provided the Village with additional materials at its request, "including an affidavit . . . documenting the

---

[1] Judge Dunst also recommended that the Shot Clock claim be dismissed against all of the original defendants, and the court decline to exercise supplemental jurisdiction over the state law claim.  *New Cingular Wireless I*, 2023 WL 8791107 at *5, *8–*9, *11.  Those recommendations were also adopted by Judge Seybert.  *New Cingular Wireless PCS II*, 2024 WL 4264200 at *6.  Those claims are not realleged in the PAC.

4

absence of any feasible alternate sites." *(Id.* ¶ 45). The Village then required AT&T to obtain variances from the Zoning Board, "including a variance for applying for a facility at a non-priority site" which AT&T alleges should have been considered by the Board of Trustees alone, not the Zoning Board, because they allege the site *was* a priority site. *(Id.* ¶¶ 58–59).[2] AT&T alleges that Defendants' "diversion of the Application to the Zoning Board . . . was in retaliation for AT&T seeking to have the Village honor its duty under the TCA to provide AT&T a timely hearing on its Application." *(Id.* ¶ 62).

The Zoning Board first heard the application on May 19, 2022, and did not render a decision then. (Am. Compl. ¶ 66). The deadline to issue a decision was extended again until August 19, 2022. *(Id.* ¶ 68). A second hearing was held on July 21, 2022, and at that hearing, the gap in service was discussed at length and AT&T was questioned about alternatives, among other things; the Zoning Board ultimately denied the Application. (*See generally* July 2022 Tr.; Am. Compl. ¶¶ 77–173).

At the hearing, the Zoning Board asked AT&T why a facility could not be located at the intersection of nearby minor highways. (Am. Compl. ¶¶ 108–09). AT&T alleges that a facility at this location would not remedy the Service Gap and would not be less intrusive or otherwise more feasible. *(Id.* ¶¶ 110–12). The PAC addresses an "outdoor distributed antenna system," or "ODAS," in a "heavily-wooded setting such as the

---

[2] The Village Code contains a list of priority sites that must be considered when placing wireless facilities. Village of Muttontown Code § 190-58. Under the Code, the Board of Trustees was authorized to refer variance applications to the Zoning Board for approval regardless of the priority level. Village of Muttontown Code §§ 190-75, 190-79. AT&T acknowledged as much at the hearings before the Zoning Board. (Tr. dated July 21, 2022, Dkt. No. 48-4 (attached as Ex. B to Defs.' Mot. to Dismiss) at 11:16–25).

5

Service Gap," and alleges that the implementation of such a system would necessarily be more intrusive and unsuitable to provide proper coverage of services. (*E.g.*, *id.* ¶¶ 14, 119–22, 125).

The Zoning Board inquired about using multiple towers elsewhere to provide the needed service, but did not identify any preferred locations within the Village, and instead suggested the facilities should be placed in neighboring municipalities. (*Id.* ¶¶ 131–32). But AT&T alleges that a multiple tower siting scheme would not be feasible, (*id.* ¶¶ 135–137), and that another tower located in other nearby towns and villages would not remedy the gap, not be available, and for other reasons not be feasible, (*id.* ¶¶ 140–148).

AT&T alleges that they "considered all reasonable alternatives to remedy the Service Gap." (*Id.* ¶ 171). Ultimately, it contends that the "absence of property other than the Site that is both sufficiently close to the center of the Service Gap and also not used for single-family residences or a nature preserve, . . . the Proposed Facility is the least intrusive and most feasible means of remedying the Service Gap." (*Id.* ¶ 93). [3]

---

[3] The PAC also contains numerous legal conclusions that the "Application Record contains no credible evidence, let alone substantial evidence, that" the Proposed Facility would, for instance, *not* remedy the gap with the proposed design, (Am. Comp. ¶¶ 81, 85); that it could be located further than one-half mile from the service gap, (*id.* ¶ 88); that it is *not* the "least intrusive and most feasible means of remedying the Service Gap," (*id.* ¶ 94); or that there was any such evidence negating its claims about other alternative sites, (*see also, e.g., id.* ¶¶ 98, 102, 105, 113, 118, 130, 139). These allegations that AT&T makes throughout its PAC—*i.e.*, the lack of credible or substantial evidence for each of these points—are conclusory legal statements that the Court need not credit. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

6

Notably, AT&T changes the relevant record from the hearing record, which was referenced substantially throughout the original Complaint, to the entire Application record, which includes all evidence submitted during the entire application process. (*Compare, e.g.*, Compl. ¶ 74, *with* Am. Compl. ¶ 118).[4]

## DISCUSSION

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); 6 Charles Alan Wright & Arthur R. Miller et al., Fed. Prac. & Proc. § 1480 (3d ed. 2010) ("When this time period expires or the party already has amended the pleading, [amendment as of right] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party.").

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting prior version of Fed. R. Civ. P. 15(a)(2)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

---

[4] AT&T also included a Rule 60(b) motion to vacate the Dismissal Order with its motion to grant leave to file an amended complaint. (Pl.'s Mem. at 1). But judgment was never entered in the case, and the case was never closed. Rule 60(b) is inapposite in the absence of a final judgment, *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1621 (2025), and in light of the decision to grant leave to amend, the motion is denied as moot.

Indeed, "[w]here the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). "However, leave need not be granted in cases of 'futility of amendment.'" *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023) (quoting *Foman*, 371 U.S. at 182).

Issues of bad faith, prejudice, and delay are easily disposed of here. Beyond merely stating the words once, Defendants have made essentially no showing of either bad faith or prejudice on AT&T's part. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Vacate Dismissal Order and Leave to File a First Am. Compl. dated May 15, 2025 ("Defs.' Opp'n."), Dkt. No. 66-4 at 2). This is insufficient to preclude amendment. *E.g., Jipeng Du v. Wan Sang Chow*, No. 18-CV-1692, 2019 WL 3767536, at *5 (E.D.N.Y. Aug. 9, 2019) ("[A] party does not demonstrate that a movant seeks to amend in bad faith with conclusory allegations.") (collecting cases); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (finding in absence of evidence of undue delay, bad faith, or undue prejudice, Rule 15's "mandate" for leave to amend "must be obeyed"). And "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted).[5]

---

[5] Indeed, this is AT&T's first motion to amend, there is no Rule 16 order in place limiting the time for amendment, and no discovery has occurred. AT&T's amendment is responsive to "learn[ing] from the District Court in what respect the complaint [was] deficient" in the present motion. *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017). Any "delay" is inherent in the life cycle of a case, and not grounds for denying the motion to amend.

8

The central issue, then, is whether the motion is futile.  A "motion to amend will be considered futile if the Court determines, 'as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"  *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 61 (E.D.N.Y. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)) (adopting report and recommendation); *see also, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) (reversing the district court's order granting plaintiff leave to amend complaint where his proposed new claim "[wa]s barred by substantive contract law").[6]  "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A. Prohibition of Services Claim

"The TCA limits state and local regulation 'of the placement, construction, and modification of personal wireless service facilities.'"  *Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 531 (2d Cir. 2005) (quoting 47 U.S.C. § 332(c)(7)).  Such

---

[6] On a motion to amend—which employs the same standard to evaluate futility as a motion to dismiss, *Charlot*, 97 F. Supp. 3d at 61—a court may consider any document "incorporated in the complaint by reference," "integral to the complaint," or subject to "judicial notice."  *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (quotations and citation omitted).  The PAC refers to the May 2022 and July 2022 hearings, as well as the Zoning Board's written denial which was attached to the original Complaint.  (*See* Decision Denying the Application of AT&T dated Aug. 17, 2022 ("Written Denial"), attached as Ex. 1 to the Compl., Dkt. No. 1-1; *e.g.*, Am. Compl. ¶¶ 176–177; 188–191).  Neither party addresses whether the Court may consider these documents, but the Court finds that they are incorporated by reference.

regulations cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). "In other words, local governments must allow service providers to fill gaps in the ability of wireless telephones to have access[.]" *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999). A locality may not deny "an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines." *Id.* To set forth a prohibition of services claim a plaintiff must allege both "that a significant gap exists in wireless coverage and that its proposed facility is the least intrusive means to close that gap." *Orange Cnty. – Cnty. Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 632 F. App'x 1, at *3 (2d Cir. 2015) (quotations omitted).

The PAC sets forth a plausible prohibition of services claim. As to the first element, the PAC alleges that there is "an area in the Village along and adjacent to a 2.7 mile stretch . . . where AT&T is unable to provide even reliable in-vehicle access to services from its network (the "Service Gap")." (Am. Compl. ¶ 15). And Defendants do not dispute that this allegation satisfies this first element. (*See generally* Defs.' Opp'n). As to the second element, the PAC alleges that AT&T investigated and considered numerous alternatives, and that none were more feasible or less intrusive options than the one they proposed to the Zoning Board. (*E.g.*, Am. Compl. ¶¶ 17–21, 92 ("[T]he Proposed facility is the least intrusive and most feasible means of remedying the Service Gap.")). This includes allegations that AT&T conducted investigations of alternatives. For example, the PAC alleges that an ODAS system would not provide "reliable in-building service" and is "not a feasible means" or "less intrusive means of remedying

10

the Service Gap." (Am. Compl. ¶¶ 121–22). It also alleges that a multi-tower scheme would not be less intrusive, and is less feasible than the Proposed Facility, because there would be "interference between the transmitters of multiple facilities" and at least one location for a suggested shorter tower would be located too far away to remedy the Service Gap. (*Id.* ¶¶ 135–137). Making the other, shorter tower significantly taller—to 200 feet—"would not be less intrusive or otherwise more feasible." (*Id.* ¶ 141). The PAC also alleges that facilities in other locations "would not be less intrusive, or otherwise more feasible." (*Id.* ¶¶ 145–46). For example, the PAC alleges that locating a facility in the Muttontown Preserve, which was discussed as an alternative at the hearing, "is unavailable for commercial development" and "would be a more intrusive means of remedying the Service Gap than the Proposed Facility." (*Id.* ¶¶ 158–59). In conclusion, after pages of allegations about consideration of specific alternatives, AT&T alleges that they "considered all reasonable alternatives to remedy the Service Gap." (*Id.* ¶ 171). These are sufficient allegations to avoid dismissal of the claim at the pleading stage. *E.g.*, *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 53 (1st Cir. 2009) (affirming denial of a motion to dismiss prohibition claim where wireless service provider thoroughly alleged it "had in fact systematically searched for solutions to the gap problem using technologically reliable criteria and methodologies. . . . [including] adding to existing wireless towers; adding to existing structures of the needed height, including utility poles; and new construction of facilities on unoccupied land").

Defendants' arguments in opposition are without merit. They contend that the PAC fails for the same reasons the original complaint did, the presence of only

11

conclusory and legal assertions. Not so. As noted above, far more than the original Complaint, the PAC contains detailed contentions about a number of alternatives, why each fails and, in the end, why the AT&T's proposal is the least intrusive.

Defendants then make a series of confusing arguments about the underlying record. They repeat and quote extensively from the prior dismissal orders, suggesting that those decisions compel the same result here. But, there is a new pleading, and so, unless Defendants point to elements of the PAC (and its attached and incorporated documents) that result in the claim failing as a matter of law, the Prohibition Claim must move forward. Defendants do not do that, and the prior decisions—addressing a prior pleading—give it no relief. Nor do they cite any cases where a prohibition claim has been dismissed at the pleading—as opposed to the summary judgment—stage. Defendants separately assert that the Prohibition Claim must fail because the additional allegations in the PAC rely on materials that were not before Zoning Board. (Defs.' Opp'n at 4). This confuses the Prohibition claim with the Substantial Evidence Claim; and indeed, many of the cases they cite address only substantial evidence claims, not prohibition claims.

The distinction is significant, as AT&T contends in its papers. (Pl.'s Mem. at 8–9). For a prohibition of services claim, district courts may consider "additional evidence beyond that which was introduced at the local level," *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 39 (1st Cir. 2014) (quotations omitted), and on a de novo basis.[7]

---

[7] Other circuits are in accord. *See Sprint Spectrum L.P. v. Zoning Bd. of Adj. of Paramus*, 606 F. App'x 669, 671 (3d Cir. 2015) ("Whether a state or local government's regulation violates the effective prohibition provision of the TCA is . . . not limited to

"The anti-prohibition, anti-discrimination, and unreasonable delay provisions, 47 U.S.C. § 332(c)(7)(B)(i)-(ii), present questions that a federal district court determines in the first instance without any deference to the board" and that "may well require evidence to be presented in court that is outside of the administrative record compiled by the local authority."  *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002).

> In considering whether substantial evidence supports the agency decision, the court is acting primarily in a familiar "review" capacity ordinarily based on the existing record.  By contrast, whether the town has discriminated among carriers or created a general ban involves federal limitations on state authority, presenting issues that the district court would resolve *de novo* and for which outside evidence may be essential.

*Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 16 n.7 (1st Cir. 1999) (internal citation omitted).[8]

---

the record compiled by the state or local authority."); *VoiceStream Minneapolis Inc. v. St. Croix Cnty.*, 342 F.3d 818, 833 (7th Cir. 2003) ("In resolving [a prohibition of services claim under the TCA], the district court may require evidence to be presented in court that is outside of the administrative record compiled by the local authority." (internal quotations omitted)); *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886, 888–89 (10th Cir. 2016) ("[C]ourts have uniformly held" the question of prohibition of services, unlike substantial evidence, to be a "legal one for the district court's consideration in the first instance, without any deference to a local zoning board.").

[8] In *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630 (2d Cir. 1999), the Court conflated "substantial evidence" and prohibition.  *Id.* at 644 ("Because there is substantial evidence in the record to support the conclusion that virtually all of Ontario could be serviced with fewer than three towers, the Planning Board did not violate subsection B(i)(II)'s ban on prohibiting personal wireless services by rejecting Sprint's all or nothing application.").  But that does not assist Defendants here.  The reference to "substantial evidence" did not address the question of whether "the record" is limited to what was before the local authority, or can include additional materials provided to the district court.  Subsequent Second Circuit cases suggest the record is not limited in the way Defendants suggest.  *E.g.*, *Orange Cnty.*, 632 F. App'x at *3 n.3.

13

The motion to amend is granted with respect to the Prohibition Claim.[9]

B. Substantial Evidence Claim

Under the TCA, "state and local governments . . . may not deny such an application except in a written decision 'supported by *substantial evidence* contained in a written record.'" *Omnipoint Commc'ns, Inc.*, 430 F.3d at 531 (quoting 47 U.S.C. § 332(c)(7)(B)). "'Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence.'" *Id. at 533* (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 493 (2d Cir. 1999)). "Substantial evidence requires evaluation of the entire record, including opposing evidence[.]" *Willoth*, 176 F.3d at 638.

Both parties' briefs on this claim provide little assistance to the Court. AT&T does slightly better, though its papers largely focus on the prohibition of services claim and barely explain why the new allegations demonstrate the Defendants' decisions were not supported by substantial evidence. For instance, when AT&T mentions substantial evidence, it does so primarily to point out that a prohibition claim is not the same claim, and the record and deference due are different, yet do so only with a single citation to the standard of review for substantial evidence and no further analysis (and in the Reply no less). (Pl.'s Reply in Further Support of Mot. to Vacate Dismissal Order and Leave to File a First Am. Compl. dated May 15, 2025, Dkt. No. 66-5 at 2). But

---

[9] While Defendants may be tempted to file a motion to dismiss this claim, such a strategy would likely be unwise and futile. As this discussion demonstrates, the claim is not amenable to a motion to dismiss—the standard is the same as that for futility on a motion to amend. Furthermore, as the cases cited by Defendants themselves demonstrate, such a claim is typically resolved at summary judgment or trial.

14

Defendants entirely confuse the standard of substantial evidence with prohibition of services, again largely recasting and repeating the prior decisions despite the existence of a new pleading with additional facts.  (*See generally* Defs.' Opp'n).  Defendants ask the Court to defer to the Zoning Board's decision and prevent AT&T's claim from going forward.  (*Id.* at 4–5).  But there is a plain legal error committed by the Board that prevents that result, at least at this stage.  The Board applied the incorrect legal standard in evaluating AT&T's application in the first instance.

AT&T sought a variance from the Zoning Board to build its Proposed Facility. *New Cingular Wireless I*, 2023 WL 8791107, at *3 ("AT&T would have to seek variances from the Zoning Board for certain relief regarding any Board of Trustees waivers from Special Use Permit requirements under Village Code § 190-79 and any Planning Board decisions under Village Code § 190-9 as modifications of dimensional requirements."); (Written Denial at 1).  Although AT&T disagreed with the need for Zoning Board approval, it agreed to submit a request for variances.  (Am. Compl. ¶ 61); *New Cingular Wireless I*, 2023 WL 8791107, at *3; *see supra* n.2.  The Board denied the application on the grounds that AT&T had failed to demonstrate "public necessity," *i.e.*, that there were no "significant gaps in coverage within the geographic range to be served," and that the proposed tower was not "the least intrusive means of providing coverage."  (Written Denial at 2–4).

But that is the "wrong test."  *Omnipoint Commc'ns*, 430 F.3d at 535.  That test is the "the showing an applicant must make before TCA § 332(c)(7)(B)(i)(II) will *require* a planning board to grant its application" under a prohibition claim.  *Id.* (emphasis in

15

original). Instead, for a substantial evidence claim, "a utility must show that (1) its new construction 'is a public necessity in that it is required to render safe and adequate service'; and (2) 'there are compelling reasons, economic or otherwise, which make it more feasible' to build a new facility than to use 'alternative sources of power such as may be provided by other facilities.'" *Id.* (quoting *Cellular Tel. Co. v. Rosenberg*, 82 N.Y.2d 364, 371–72 (1993) (itself quoting *Consol. Edison Co. v. Hoffman*, 43 N.Y.2d 598, 611 (1978))). In other words, for *this* claim, AT&T was required to demonstrate that there was a gap in service and the proposed tower was "more feasible" than other options, *id.*, a far less demanding standard than showing its proposal is the "least intrusive" one. The PAC repeatedly alleges, by examining numerous alternatives in a nonconclusory fashion, that there were no other more feasible sites or options to remedy the gap. And the Zoning Board's decision to deny the application therefore should have been based on substantial evidence with respect to *feasibility*, not intrusiveness.

It may be that ultimately, at summary judgment or trial, the record will show that even under the proper standard, the Board's decision was supported by substantial evidence. *E.g.*, *Omnipoint Commc'ns*, 430 F.3d at 535–36. But that requires argument, evidence, and a presentation that simply has not been made yet. And as a result, it would be improper to deny amendment on futility grounds and dismiss this claim. *See Willoth*, 176 F.3d at 645 (noting "error of law" by the locality is a basis to set aside a zoning decision); *e.g.*, *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*, 552 F. App'x 47, 50 (2d Cir. 2014) ("[T]he district court was correct in finding that the Town's

16

determination was 'premised on an error of law,' and that therefore its determination was 'not supported by substantial evidence.'").

The motion to amend is therefore granted with respect to the substantial evidence claim.

## CONCLUSION

For the reasons explained above, the motion to amend is granted. AT&T is directed to file the Amended Complaint as a separate docket entry by September 3, 2025. Following the filing of the Amended Complaint, the Clerk is directed to amend the case caption to reflect the dismissal of defendants no longer party to the case. The parties are directed to reach out to Magistrate Judge Dunst's chambers to (a) enter into a Rule 16 scheduling order; and (b) schedule a settlement conference. Any summary judgment practice may be commenced only after meeting with Judge Dunst and in accordance with Judge Bulsara's Individual Practices.

SO ORDERED.

*/s/ Sanket J. Bulsara   August 27, 2025*
SANKET J. BULSARA
United States District Judge

Date:  August 27, 2025
       Central Islip, New York